UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 14-20206-CR-BLOOM/VALLE

UNITED STATES OF AMERICA,

    v.

DAMASE CAMERON, a/k/a "Dime,"
a/k/a "Son Son,"

    Defendant.
_____/

### REPORT AND RECOMMENDATION TO DISTRICT JUDGE ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

THIS MATTER is before the Court on Defendant Damase Cameron's Motion to Suppress Evidence ("Motion") (ECF No. 130), which was referred to the undersigned for a Report and Recommendation by United States District Judge Beth Bloom.  *See* (ECF No. 149). The undersigned has reviewed Defendant's Motion and the Government's Response (ECF No. 163), and held an evidentiary hearing on August 19, 2014.  For the reasons set forth below, the undersigned recommends that Defendant's Motion be **DENIED**.

**I.**    **INTRODUCTION**

Defendant has been charged by indictment with conspiring to possess with intent to distribute various controlled substances, in violation of 21 U.S.C. § 846 (Count 1); conspiring to possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count 2); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3); and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 4).  *See* (ECF No. 3).

Defendant now moves under Federal Rule of Criminal Procedure 12(b)(3)(C) and the Fourth Amendment to the United States Constitution to suppress evidence recovered after an alleged unconstitutional "seizure" of Defendant. *See* (ECF 130 at 4). Defendant first argues that he was illegally seized when law enforcement officers used a police car to block-in Defendant's vehicle, without having a reasonable suspicion that Defendant was engaged in criminal activity. *Id.* Failing that, Defendant next contends that, even if he was not illegally seized, the totality of the circumstances did not give the officers reasonable suspicion to subsequently detain him at gunpoint. *Id.* at 6. Accordingly, Defendant argues that the firearm and narcotics recovered from his person and vehicle during his arrest must be suppressed.

## II.     **FINDINGS OF FACT**[1]

Around 8:30 p.m. on November 21, 2013, Miami-Dade police officers George Eugene and Demetrius Coppet were on patrol in Brownsville, a neighborhood of Miami, Florida. The officers were riding in Officer Coppet's marked police car. Officer Coppet was driving, while Officer Eugene rode in the passenger seat.

During their patrol, the officers spotted and followed a Nissan Maxima into the parking lot of an apartment complex located in a high-crime area known for homicides, robberies, and narcotics. The officers testified that they were following the Nissan to obtain and run its license plate, because Nissan Maximas are commonly stolen cars. After turning into the parking lot, the officers saw that the Nissan parked in one of the parking spots. Officer Coppet slowed his police car to a stop to observe the Nissan and its passengers from a distance. The driver, accompanied

---

[1] On August 19, 2014, the undersigned held an evidentiary hearing on Defendant's Motion. During the hearing, Officer George Eugene and Officer Demetrius Coppet, both experienced Miami-Dade police officers, testified for the Government. Based on their testimony and other evidence admitted during the hearing, the undersigned finds that the facts set forth in Section II occurred in connection with Defendant's arrest.

by an elderly female, then got out of the Nissan and started walking towards the nearby apartment buildings. Because their behavior upon exiting the Nissan was consistent with lawful behavior (as opposed to how Officer Coppet would expect a car thief to act if the Nissan had, in fact, been stolen), Officer Coppet's suspicion about the Nissan subsided.

At that point, however, to the right of where he had stopped the car to observe the Nissan, Officer Coppet noticed a compact Scion XB utility vehicle backed into a parking space. Although the front of the Scion was facing the passenger side of the police car, there was substantial, unobstructed space between the two vehicles. Officer Coppet testified that there was about 13 feet of unobstructed space between the passenger side of his police car and the front end of the Scion. Officer Eugene, who stands 6 feet 2 inches tall, testified that there was at least enough space between the two vehicles for him to lie down without touching either car. Both officers agreed, moreover, that the Scion could "easily" have pulled out of its parking spot without hitting the police car and driven away. In addition to their testimony, a photograph taken at the scene also showed a substantial distance between the two vehicles. *See* Government's Exhibit 3.[2]

From their vantage point inside the police car, the officers could see two men sitting inside the Scion with the interior dome light on. One man (later identified as Defendant) was in the driver's seat; another man (later identified as Charquavius Linder) was in the passenger's seat. The officers testified that both men had their heads down and appeared to be looking down at their hands.

---

[2] Defendant argues that Government's Exhibit 10 shows substantially less space between the police car and the Scion than does Government's Exhibit 3. The Court will, however, rely on the sworn, uncontroverted testimony of the police officers that there was approximately 6 to 13 feet of unobstructed space between the two vehicles.

3

Officer Eugene testified that, because part of his job is to be "nosy and investigate," he decided to get out of the police car and approach the Scion to talk to the occupants. As Officer Eugene began to get out of the police car, the passenger in the Scion (Linder) looked up and noticed the officers' presence. Linder then opened the passenger door, got out of the Scion, and took off running between the nearby apartment buildings. Officer Eugene pursued him on foot.[3] Officer Coppet, however, stayed behind and focused on Defendant. Officer Coppet's impression was that Defendant was not aware that a second officer was present, because Defendant's attention was on the ground pursuit of the passenger.

Officer Coppet then saw Defendant tilt his seat back, reach into his waistband with his right hand, and place an object on the floor behind the passenger seat in the Scion. Based on years of law enforcement experience, Officer Coppet immediately suspected that Defendant had removed a firearm from his waistband in an attempt to hide it behind the passenger seat. Concerned about officer safety, Officer Coppet drew his firearm and approached the Defendant.

As he approached the Scion, Officer Coppet ordered Defendant to put his hands up. Defendant was surprised to see Officer Coppet, and exclaimed "Oh!" when he saw the officer. When Defendant raised his hands, Officer Coppet saw that Defendant's left hand was clenched into a fist. Officer Coppet then ordered Defendant out of the Scion and onto the ground. Once on the ground, Defendant opened his left hand, revealing a folded dollar bill containing apparent marijuana and a plastic bag of apparent cocaine. Officer Coppet thus arrested Defendant.

---

[3] During the pursuit, Officer Eugene saw Linder slip and fall on a concrete walkway within the apartment complex. When Linder hit the concrete, a dollar bill containing apparent marijuana fell out of his hand and into plain view on the ground. Officer Eugene thus arrested Linder. A search of Linder incident to his arrest revealed eight small plastic bags containing apparent powder cocaine, twenty-nine small clear plastic bags containing apparent crack cocaine, thirteen small clear plastic bags containing apparent marijuana, and approximately $87 in cash.

With both Defendant and Linder secured, the officers searched the Scion incident to the arrests. Lying in plain view on the floor behind the passenger seat of the Scion was a loaded and reportedly stolen Springfield XD-9 handgun. Inside a compartment in the driver-side door was a small plastic bag containing apparent marijuana.

### III. CONCLUSIONS OF LAW

In his Motion, Defendant asserts two alternative arguments to suppress the firearm and narcotics recovered during his arrest. First, Defendant argues that he was illegally "seized" when Officer Coppet blocked-in Defendant's vehicle with his police car. Second, Defendant argues that, even if he was not illegally seized, Officer Coppet still lacked a reasonable, articulable suspicion of criminal activity to subsequently detain him at gunpoint, despite Linder's flight and Defendant's purportedly furtive movements.

#### A. Defendant was not "seized" when Officer Coppet stopped his police car in front of Defendant's vehicle.

Defendant first argues that he was illegally "seized" when Officer Coppet purportedly used his police car to block-in Defendant's vehicle, without having a reasonable articulable suspicion to detain Defendant. *See* (ECF No. 130 at 4). According to Defendant, he was merely sitting in the parked Scion with another man minding his own business, when Officer Coppet blocked-in his Scion with the police car. *Id.* at 4-6. Defendant contends that this encounter was an unconstitutional "seizure" because, at that point, Defendant had not done anything to create a reasonable, articulable suspicion of criminal activity; nor did Defendant believe he was free to leave. *Id.* In response, the Government argues that the officers did not "seize" Defendant in any way, let alone illegally, because Defendant's Scion was not blocked-in and a reasonable person would have believed he was free to drive away. *See* (ECF No. 163 at 4-5). Having carefully considered the relevant facts and law, the Court concludes that no seizure took place.

5

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. Before evaluating whether any alleged "seizure" is reasonable or not, however, courts must first determine whether the police-citizen encounter was in fact a "seizure." *See, e.g.*, *United States v. Hill*, 626 F.2d 429, 432 (5th Cir. 1980) (articulating the following two-step analysis under the Fourth Amendment: "(1) whether the initial contact was a 'seizure' within the meaning of the [F]ourth [A]mendment; and (2) if a 'seizure' occurred, whether a reasonable suspicion of criminal activity existed at the time of the seizure").[4]

As a general rule, a "seizure" has occurred "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In making this determination, courts consider "'whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.'" *United States v. Perez*, 443 F. 3d 772, 777 (11th Cir. 2006) (quoting *United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991)).

Applying the *Perez* factors here, this Court concludes that Defendant was not "seized" when Officer Coppet stopped his police car in front of Defendant's Scion. First, although the police car stopped in front of Defendant's Scion, neither the officers nor their police car blocked or otherwise impeded Defendant's path. Indeed, Officer Coppet testified that he did not reposition his police car to block-in Defendant, but merely stopped the car in place after

---

[4] In *Bonner v. Pritchard*, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered before October 1, 1981.

following the Nissan into the parking lot.  Moreover, Officers Coppet and Eugene testified that there was about 6 to 13 feet of space between the passenger side of the police car and the front end of Defendant's Scion.  Both officers agreed, moreover, that Defendant could have "easily" pulled the Scion out of its parking spot and driven away, had he chosen to do so.  In addition to their uncontroverted testimony, a photograph taken at the scene showed a substantial distance between the two vehicles.  *See* Government's Exhibit 3.  Based on this evidence, the Court concludes that Defendant's path was not blocked or impeded by law enforcement.[5]

Other *Perez* factors also support the conclusion that Defendant's initial encounter with the officers was not a "seizure."  Not only were the police sirens off, for example, but the officers in no way announced their presence.  There were no flashing lights or loudspeakers.  Nor did the officers initially display any weapons, retain Defendant's identification, communicate with Defendant in any way, or physically touch Defendant or the Scion.  In fact, the entire alleged "seizure" occurred over a matter of seconds between the time when Officer Coppet stopped his police car and when Linder fled on foot.

In sum, having carefully considered the facts in this case, the Court concludes that Defendant was not "seized" within the meaning of the Fourth Amendment merely because Officer Coppet happened to stop his police car some distance in front of Defendant's Scion.  Considering all of the surrounding circumstances, a reasonable person in Defendant's shoes would have believed he was free to leave.[6]

---

[5] Even if the police car had blocked-in Defendant's Scion and prevented him from driving away, that circumstance alone would not necessarily constitute a "seizure."  *See, e.g.*, *Miller v. Harget*, 458 F.3d 1251 (11th Cir. 2006) (holding that a patrol car's obstruction of a defendant's vehicle is not a per se seizure that must be supported by reasonable suspicion).

[6] Because Defendant was not seized when Officer Coppet stopped his police car near Defendant's Scion, the Court need not proceed to the next step of determining whether a reasonable suspicion of criminal activity supported the seizure.  *See Hill*, 626 F.2d at 432

### B. Officer Coppet had a reasonable, articulable suspicion to detain Defendant at gunpoint following Linder's flight from law enforcement and Defendant's subsequent furtive movements.

Defendant next argues that, even if he was not illegally seized, Officer Coppet still lacked a reasonable, articulable suspicion to subsequently detain Defendant at gunpoint. *See* (ECF No. 130 at 6-10). Specifically, Defendant contends that while the officers may have had reasonable suspicion to detain Linder once he fled from law enforcement, Officer Coppet nonetheless had no lawful basis to detain Defendant. *Id.* at 8. In response, the Government argues that under the totality of the circumstances, including Linder's flight and Defendant's subsequent furtive movements, Officer Coppet did have a reasonable, articulable suspicion to suspect that Defendant was engaged in criminal activity. *See* (ECF No. 163 at 6).

Case law is clear that law enforcement officers may conduct a brief, investigatory stop "where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) (citations and internal quotation marks omitted). "'While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.'" *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). "Reasonable suspicion need not involve the observation of illegal conduct, but does require 'more than just a hunch.'" *Id.* (quoting *United States v. Lee*, 68 F.3d

---

(explaining that second step requires determining "whether a reasonable suspicion of criminal activity existed at the time of the seizure"). By the same token, the Court also has no occasion to address Defendant's reliance on the Sixth Circuit's non-binding opinion in *United States v. See*, 574 F.3d 309 (6th Cir. 2009), which was argued at length during the suppression hearing, because *See* was a "reasonable suspicion" case.

1267, 1271 (11th Cir. 1995)). In evaluating whether reasonable suspicion existed in a particular case, courts consider "the totality of the circumstances in light of the officer's own experience" to ascertain whether the officer had an objectively reasonable basis for suspecting criminal activity. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

Here, the Court concludes that the totality of the circumstances gave rise to a reasonable suspicion that Defendant was involved in, or was about to be involved in, criminal activity. After stopping his police car near Defendant's Scion, Officer Coppet saw Defendant and Linder sitting inside the Scion with the dome light on in a high-crime area. Officer Coppet observed that both men had their heads down, and they appeared to be looking down at their hands.[7] After only a few seconds, Linder looked up and noticed the officers' presence. Linder then jumped out of the Scion and took off running between the nearby apartment buildings.[8] While Officer Eugene pursued Linder, Officer Coppet stayed behind and watched Defendant, who seemed unaware of Officer Coppet's presence. Officer Coppet then saw Defendant tilt his seat back, reach into the waistband of his pants, and place an object on the floor behind the passenger seat.

---

[7] Defendant argues that these circumstances alone—sitting with another man in a parked vehicle at night in a high-crime area and looking downwards—are not inherently suspicious. As the officers conceded, Defendant could have been looking at a cellphone or otherwise engaged in wholly lawful conduct. While the Court agrees with Defendant that such circumstances, viewed in isolation, do not give rise to reasonable suspicion of criminal activity, the Court must look at the totality of circumstances to determine whether reasonable suspicion existed in this case.

[8] Defendant concedes that the officers may have had a reasonable, articulable suspicion that Linder was engaged in criminal activity because of his flight. *See* (ECF No. 130 at 8). Defendant insists, however, that Linder's flight, standing alone, cannot support reasonable suspicion as to him because he did not run. In support of this argument, Defendant cites the Third Circuit's non-binding opinion in *United States v. Navedo*, 694 F.3d 463 (3d Cir. 2012). While *Navedo* stands for the proposition that one person's flight from law enforcement cannot serve as the sole basis for reasonable suspicion as to a third person who did not flee, *see id.* at 468-69, that is not the case here. As discussed above, Linder's flight from the officers was but one of a number of circumstances that combined to create a reasonable suspicion that Defendant was engaged in criminal activity. *See United States v. Gordon*, 231 F.3d 750, 756-57 (11th Cir. 2000) (holding that flight from law enforcement is one relevant factor in determining whether reasonable suspicion exists).

Based on his experience that firearms are often concealed in waistbands, and that people often try to ditch or hide guns before a police encounter, Officer Coppet suspected that Defendant had removed a firearm from his waistband and tried to hide it in the backseat of the Scion.  Having observed these furtive movements, and concerned about officer safety, Officer Coppet thus drew his firearm and approached Defendant.

Under the totality of these circumstances, the Court concludes that Officer Coppet had an objectively reasonable basis for suspecting that Defendant was involved in, or was about to be involved in, criminal activity.  Defendant's detention, therefore, did not violate his Fourth Amendment rights.

## IV. RECOMMENDATION

Consistent with the foregoing, the undersigned respectfully recommends that Defendant Damase Cameron's Motion to Suppress Evidence ("Motion") (ECF No. 130) be **DENIED**.

The parties may serve and file written objections to this Report and Recommendation with the District Judge within fourteen (14) days of being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *See id*.; *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida, on September 3, 2014.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Beth Bloom
All Counsel of Record